IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

BOILERMAKER-BLACKSMITH NATIONAL )
PENSION TRUST; BOILERMAKERS NATIONAL )
HEALTH AND WELFARE FUND; )
BOILERMAKERS NATIONAL ANNUITY )
TRUST; BOILERMAKERS' APPRENTICESHIP )
AND TRAINING FUNDS; JOHN FULTZ as a )
fiduciary of the BOILERMAKER-BLACKSMITH )
NATIONAL PENSION TRUST, BOILERMAKERS )
NATIONAL HEALTH AND WELFARE FUND, )
BOILERMAKERS NATIONAL ANNUITY )
TRUST and BOILERMAKERS' )
APPRENTICESHIP AND TRAINING FUNDS; )
THE MOBILIZATION, OPTIMIZATION, )
STABILIZATION AND TRAINING FUND; and )
DALE BRANSCUM, II as a fiduciary of THE )
MOBILIZATION, OPTIMIZATION, )
STABILIZATION AND TRAINING FUND, )
)
                Plaintiffs, )
vs. ) Case No. 5:20-cv-6021
)
ELITE MECHANICAL & WELDING, LLC, )
)
                Defendant. )

## COMPLAINT

Plaintiffs, for their cause of action against Defendant, Elite Mechanical & Welding, LLC, state as follows:

## NATURE OF THE CASE

1. This is an action brought pursuant to §§ 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145 to collect fringe benefit contributions from the Defendant as are due and owing to the Plaintiff Employee Benefit Plans.

# PARTIES

2. Plaintiff Boilermaker-Blacksmith National Pension Trust ("the Pension Fund") is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3). The Pension Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d). The Pension Fund maintains its principal place of administration at 12200 NW Ambassador Drive, Kansas City, Missouri 64163, which is located within the territorial boundaries of the Western District of Missouri. The Pension Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5).

3. Plaintiff Boilermakers National Health and Welfare Fund ("the Health & Welfare Fund") is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3). The Health & Welfare Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d). The Health & Welfare Fund maintains its principal place of administration at 12200 NW Ambassador Drive, Kansas City, Missouri 64163, which is located within the territorial boundaries of the Western District of Missouri. The Health & Welfare Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

4. Plaintiff Boilermakers National Annuity Trust ("the Annuity Fund") is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3). The Annuity Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d). The Annuity Fund maintains its principal place of administration at 12200 NW Ambassador Drive, Kansas City, Missouri 64163, which is located within the territorial boundaries of the Western District of

Missouri. The Annuity Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

5. Plaintiff Boilermakers' Apprenticeship and Training Fund ("the Apprenticeship Fund") is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3). The Apprenticeship Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d). The Apprenticeship Fund maintains its principal place of administration at 12200 NW Ambassador Drive, Kansas City, Missouri 64163, which is located within the territorial boundaries of the Western District of Missouri. The Apprenticeship Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c)(5) and (6) of the LMRA, 29 U.S.C. § 186(c)(5) and (6).

6. Plaintiff John Fultz is a fiduciary of the Plaintiffs Pension Fund, Health & Welfare Fund, Annuity Fund, and Apprenticeship Fund within the meaning of 29 U.S.C. § 1002(21), and as such, is a proper party to this action.

7. Plaintiff Mobilization, Optimization, Stabilization and Training Fund ("the MOST Fund") is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3). The MOST Fund maintains its principal place of administration at 12200 NW Ambassador Drive, Kansas City, Missouri 64163, which is located within the territorial boundaries of the Western District of Missouri. The MOST Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d). Additionally, the MOST Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c).

8. Plaintiff Dale Branscum, II is a fiduciary of the MOST Fund within the meaning of 29 U.S.C. § 1002(21), and as such, is a proper party to this action.

9. Defendant, Elite Mechanical & Welding, L.L.C. is a limited liability company organized under and existing by virtue of the laws of the State of West Virginia. Defendant is an employer within the meaning of 29 U.S.C. § 1002(5).

## JURISDICTION

10. This Court has jurisdiction of Plaintiffs' claims pursuant to 29 U.S.C. §§ 1132 and 1145, and also pursuant to 28 U.S.C. § 1331.

11. Whereas the Plaintiff employee benefit plans are administered in the Western District of Missouri, venue is appropriate in this district pursuant to 29 U.S.C. § 1132(e)(2).

## GENERAL ALLEGATIONS

12. At all times relevant hereto, Defendant has been a party to one or more collective bargaining agreements with the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ( "IBB") and/or affiliate local unions of the IBB (collectively, "the Union").

13. Plaintiffs Pension Fund, Health & Welfare Fund, Annuity Fund, Apprenticeship Fund, and MOST Fund (collectively, "the Funds") are established and operated pursuant to written agreements and/or declarations of trust.

14. These agreements and/or declarations of trust are incorporated by reference into and are a material part of the collective bargaining agreement(s) between Defendant and the Union.

15. At all material and relevant times to this action, Defendant has employed employees who have performed covered work under the collective bargaining agreement(s).

16. Under the collective bargaining agreement(s), Defendant must timely submit reports and fringe benefit contributions to the Funds. Defendant must submit contributions to the

4

Funds each month in such amounts as determined by the number of hours of covered work performed by Defendant's employees at the rates established for each of the Funds in the collective bargaining agreement(s).

17. The collective bargaining agreement(s) require that contributions due to the Funds are to be paid by the fifteenth (15th) day of the month following the month in which the work was performed, and payments are delinquent if not received by that date.

18. Under the Funds' written agreements and/or declarations of trust and by law, the Funds may audit any of the books and records of employers obligated to remit reports and contributions to the Funds, in order to ensure that such employers are complying with their reporting and contribution obligations.

19. The Funds retained the services of Wilson McShane Corporation to conduct a compliance audit of Defendant covering the period from January 1, 2015 through December 31, 2017 ("Audit Period").

20. In connection with this audit, Wilson McShane reviewed documents submitted by Defendant.

21. From the documentation it reviewed, Wilson McShane could not determine whether four (4) employees performed covered work.

22. Defendant had not reported the hours of these employees during the Audit Period.

23. Wilson McShane repeatedly asked Defendant for documentation establishing whether these employees performed covered work, but Defendant refused to provide additional documentation confirming whether these employees performed covered work during the Audit Period.

5

## COUNT I: ERISA DELINQUENCY ACTION

24. Paragraphs 1 through 23 are incorporated by reference, as if fully set out herein.

25. Under the Funds' written agreements and/or declarations of trust, if an employer maintains insufficient records to determine (a) which employee performed covered work and (b) how many hours of covered work were performed, it is presumed that such work is covered work for which contributions are required.

26. Defendant has maintained insufficient records to determine whether these employees performed covered work during the audit period.

27. Thus, it is presumed that the work by these employees was covered work for which contributions are required under the collective bargaining agreements.

28. For the unreported hours of the four employees, Defendant has failed to remit one hundred and forty-seven thousand, five hundred and forty-eight and 90/100 dollars ($147,548.90) in principal contributions during the Audit Period.

29. As a result, Defendant has failed to contribute to Plaintiffs under the terms of the collective bargaining agreement(s).

30. The collective bargaining agreement(s), the trust agreements, and ERISA provide remedies to the Fund in the event an employer fails to make required contributions. Among the remedies available are costs of collection, attorneys' fees, interest, and liquidated damages.

31. Pursuant to the collective bargaining agreement(s) and the trust agreements incorporated therein, Defendant is liable to the Funds for liquidated damages of twelve percent (12%) of the delinquent contributions.

32. Accordingly, Defendant is liable to the Fund for liquidated damages in the amount of seventeen thousand, seven hundred and thirty-nine and 64/100 dollars ($17,739.64)

upon the delinquent contributions for the unreported hours of covered work performed during the Audit Period.

33. Pursuant to the collective bargaining agreement(s) and the trust agreements incorporated therein, Defendant is liable to the Funds for interest at the rate of twelve percent (12%) *per annum* upon the delinquent contributions and the liquidated damages.

34. Accordingly, as of February 18, 2020, Defendant is liable to the Funds for accrued interest in the amount of sixty-two thousand, five hundred and twenty-three and 38/100 dollars ($62,523.38) upon the delinquent contributions for the unreported hours of covered work performed during the Audit Period, and liquidated damages thereon. Interest continues to accrue.

35. The Funds have incurred attorneys' fees and other costs in their efforts to remedy Defendant's failure to pay fringe benefit contributions. The Funds are entitled to recover these fees and costs pursuant to the terms of the collective bargaining agreement(s) and by law.

**WHEREFORE,** Plaintiffs pray that the Court enter an Order:

a) Finding that Defendant is liable to the Funds in the amount of two hundred and twenty-seven thousand, eight hundred and eleven and 92/100 dollars ($227,811.92) (contributions - $147,548.90; liquidated damages - $17,739.64, and interest accrued through February 18, 2020 - $62,523.38) and entering judgment against Defendant and in favor of the Plaintiffs for these amounts, plus interest that accrues from February 18, 2020 through the date judgment is entered;

b) Awarding the Plaintiffs their costs of this action, including Plaintiffs' reasonable attorneys' fees; and

7

c) Granting the Plaintiffs such other relief that the Court deems just and proper, including interest that accrues during the pending of this action.

## COUNT II: FAILURE TO COMPLY WITH AUDIT OBLIGATIONS

36. Paragraphs 1 through 23 are incorporated by reference, as if fully set out herein.

37. Plaintiffs plead this claim in the alternative, if Defendant has further documents that it has not yet produced that establish that the four employees performed no covered work for the hours referenced in Plaintiffs' invoice. *See* Fed. R. Civ. P. 8(d)(3).

38. Under the Funds' written agreements and/or declarations of trust and by law, an employer that refuses to supply any requested documentation necessary to complete an audit must pay costs associated with obtaining those documents, including any attorneys' fees incurred by Plaintiffs.

39. As noted above, Plaintiffs have repeatedly asked Defendant to produce documentation establishing that the four employees performed no covered work.

40. Yet, Defendant has refused to provide such documentation.

41. Upon information and belief, Defendant has documents that establish whether the four employees in dispute performed covered work.

42. As a result of Defendant's refusal to produce the requested documents, Plaintiffs have incurred costs, including attorneys' fees.

**WHEREFORE,** Plaintiffs pray that the Court enter an Order:

a) Requiring Defendant to produce any and all documents establishing whether the four employees performed covered work; and

b) Awarding the Plaintiffs their costs of this action, including Plaintiffs' reasonable attorney's fees; and

c) Granting the Plaintiffs such other relief that the Court deems just and proper, including interest that accrues during the pending of this action.

          Respectfully submitted,

          **BLAKE & UHLIG, P.A.**
          753 State Avenue, Suite 475
          Kansas City, Kansas 66101
          Telephone: (913) 321-8884
          Facsimile: (913) 321-2396

By   /s/ Nathan A. Kakazu
      Nathan A. Kakazu, MO # 70157
      **ATTORNEYS FOR PLAINTIFFS**